NO. 14-15595

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANGEL FRALEY; PAUL WANG; JAMES H. DUVAL, a minor, by and through
James Duval, as Guardian ad Litem; WILLIAM TAIT, a minor, by and through
Russell Tait, as Guardian ad Litem; SUSAN MAINZER; LUCY FUNES;
INSTAGRAM, LLC,
*Plaintiffs-Appellees*,

C.M.D.; T.A.B.; H.E.W.; B.A.W.; A.D.Y.; R.P.Y.,
*Intervenor-Plaintiffs-Appellees*,

SAM KAZMAN,
*Objector-Appellant*,

v.

FACEBOOK, INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California at San Francisco
No. 3:11-cv-01726-RS, District Judge Richard Seeborg

Opening Brief of Appellant Sam Kazman

CENTER FOR CLASS ACTION FAIRNESS
Theodore H. Frank
1718 M Street NW, No. 236
Washington, D.C. 20036
(703) 203-3848
*Attorney for Objector-Appellant Sam Kazman*

# Table of Contents

Table of Contents...........................................................................................i

Table of Authorities ....................................................................................iii

Statement of Subject Matter and Appellate Jurisdiction ...........................1

Statement of the Issues................................................................................2

Standard of Review .....................................................................................3

Statement of the Case ..................................................................................4

      A.      Plaintiffs sue over Facebook's "Sponsored Stories."...................4

      B.      The parties settle, then revise their settlement. ...........................5

      C.      Sam Kazman objects. ....................................................................8

      D.      Plaintiffs move for final approval and respond to objections. ...................9

      E.      The district court approves the Settlement...................................10

      F.      Objector Kazman moves for attorneys' fees and an incentive................11

      G.      The district court denies Kazman's fee request. .........................12

Summary of Argument ...............................................................................13

Preliminary Statement................................................................................15

Argument....................................................................................................17

I.      Ninth Circuit law entitles Kazman to attorneys' fees because his objection
      realized a substantial benefit for the class............................................17

      A.      The district court adopted two legal theories championed by Kazman
            that realized $2.8 million to the class, and erred as a matter of law in
            failing to consider this, by itself, to be class benefit. ................................20

      B.      It was independent legal error for the district court to deny attorneys'
            fees for a material improvement in class recovery even if it was correct in
            holding that the benefit was "only" $300 thousand................................28

      C.      Kazman was the first to suggest increased payments to claimants..........30

      D.      Other public policy reasons militate for broad grants of attorneys' fees to
            objectors. ....................................................................................36

II.     For the same reasons that it was error to deny attorneys' fees, it was error to deny an incentive award to Kazman...................................................................38

III.    On remand, Kazman's share of the attorneys' fees award should be disbursed from the 25% of the net settlement fund already found to be a reasonable payment to class counsel so that the class is not double-billed..........................39

Conclusion.................................................................................................................43

Statement of Related Cases Under Circuit Rule 28-2.6.....................................44

Certificate of Compliance with Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1 .........45

Certificate of Service.............................................................................................46

# Table of Authorities

<u>Cases</u>

*Abdullah v. U.S. Sec. Assocs.*,
    731 F.3d 952 (9th Cir. 2013) ....................................................................3

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ...........................................................................18-19

*In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF,
    2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011) .....................38

*Arellano v. T-Mobile United States, Inc.,* No. C 10-05663,
    2011 U.S. Dist. LEXIS 21441 (N.D. Cal. Mar. 3, 2011).......................28

*In re Baby Products Antitrust Litig.*,
    708 F.3d 163 (3d Cir. 2013)...........................................................20, 34-36

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................. 6, 16

*Brown v. Stackler*,
    612 F.2d 1057 (7th Cir. 1980) ...........................................................27-28

*Budinich v. Becton Dickinson & Co.*,
    486 U.S. 196 (1988) .................................................................................2

*Commonwealth Electric Co. v. Woods Hole*,
    754 F.2d 46 (1st Cir. 1985) ....................................................................42

*Crawford v. Astrue*,
    586 F.3d 1142 (9th Cir. 2009) .................................................................3

*In re Classmates.com Consol. Litig.*,
    2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ....................15, 40, 42

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) .................................................................40

*Dewey v. Volkswagen of Am.*,
   909 F. Supp. 2d 373 (D.N.J. 2012) .............................................................38

*In re Dry Max Pampers Litig.*,
   724 F.3d 713 (6th Cir. 2013) ....................................................................27

*Eubank v. Pella Corp.*, No. 13-2091,
   -- F.3d --, 2014 U.S. App. LEXIS 10332 (7th Cir. Jun. 2, 2014) ........17-19, 25-27

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ....................................................................18

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) .............................................................. 16, 39

*Hunt v. Rousmanier's Adm'rs*,
   21 U.S. (8 Wheat) 174 (1823) ...................................................................42

*Ingram v. Oroudjian*,
   647 F.3d 925 (9th Cir. 2011) ....................................................................40

*Klier v. Elf Atochem N. Am., Inc.*,
   658 F.3d 468 (5th Cir. 2011) ............................................................ 9, 34-35

*Laguna v. Coverall N. Am., Inc.*, No. 12-55479,
   -- F.3d --, 2014 U.S. App. LEXIS 10259 (9th Cir. Jun. 3, 2014) ...................26-27

*Lane v. Facebook*,
   696 F.3d 811 (9th Cir. 2012) ....................................................................25

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766 (N.D. Ohio 2010) ....................................................35, 38, 42

*In re Magsafe Apple Power Adapter Litig.*, No. 12-15757,
   2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 8, 2014) (unpublished) ...................16

*Mount Hope Church v. Bash Back*,
   705 F.3d 418 (9th Cir. 2012) ................................................................. 1-2

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) ..................................................................16

*Neslin v. Wells,*
  104 U.S. 428 (1882) ...................................................................41

*Nguyen v. Radient Pharms. Corp.,*
  No.11-cv-00406, 2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ....22-23

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,*
  *LLP,* 322 F.3d 147 (2d Cir. 2003) ...........................................41

*In re Online DVD Antitrust Litig.,*
  No. 12-15705 (*appeal pending* 9th Cir., argued Feb. 13, 2014) ...............23

*Parker v. Time Warner Entm't Co., L.P.,*
  631 F. Supp. 2d 242 (E.D.N.Y. 2009) ....................................42

*Petersen v. Lowe's Hiw, Inc.,* No. C 11-01996,
  2012 U.S. Dist. LEXIS 123018 (N.D. Cal. Aug. 24, 2012) ...................23

*Powers v. Eichen,*
  229 F.3d 1249 (9th Cir. 2000) ..............................................19

*In re Prudential Ins. Co. of Am.,*
  273 F. Supp. 2d 563 (D.N.J. 2003)........................................42

*In re Prudential Ins. Co. of Am. Sales,*
  278 F.3d 175 (3d Cir. 2002).................................................19

*In re Puerto Rican Cabotage Antitrust Litig.,*
  815 F. Supp. 2d 448 (D.P.R. 2011) .......................................23

*Redman v. RadioShack,*
  No. 14-1470 (*appeal pending* 7th Cir., scheduled for argument Sep. 8,
  2014).............................................................................23

*Reynolds v. Beneficial Nat'l Bank,*
  288 F.3d 277 (7th Cir. 2002) ................................................24-25, 28

*Rodriguez v. Disner,*
  688 F.3d 645 (9th Cir. 2012) ("*Rodriguez II*")........................2-3, 14, 18, 22, 24, 40

*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009) ("*Rodriguez I*") ........................3, 14, 18, 22, 24-26, 29

*Smith v. Clark County Sch. Dist.*,
   727 F.3d 950 (9th Cir. 2013) ......................................................................3

*Thomas v. City of Beaverton*,
   379 F.3d 802 (9th Cir. 2004) ....................................................................31

*In re Trans Union Corp. Privacy Litig.*,
   629 F.3d 741 (7th Cir. 2011) ....................................................................27

*United Steelworkers of Am. v. Sadlowski*,
   435 U.S. 977 (1978) ..................................................................................40

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................................18

*Vollmer v. Selden*,
   350 F.3d 656 (7th Cir. 2003) ....................................................................19

*Vought v. Bank of Am.*,
   901 F. Supp. 2d 1071 (C.D. Ill. 2012) ....................................................36

*White v. Auerbach*,
   500 F.2d 822 (2d Cir. 1974) ....................................................................18

*Wilson v. Southwest Airlines*,
   880 F.2d 807 (5th Cir. 1989) ....................................................................41

## Rules and Statutes

28 U.S.C. § 1291 ............................................................................................1

28 U.S.C. § 1332(d)(2) ..................................................................................1

28 U.S.C. § 1332(d)(2)(A) ............................................................................1

28 U.S.C. § 1453(b) .......................................................................................1

Cal Civ. Code § 3344......................................................................................5

Fed. R. App. Proc. 4(a)(1)(A) ........................................................................1

Fed. R. Civ. Proc. 11 ....................................................................................26

Fed. R. Civ. Proc. 23(a)(4) ........................................................................10

Fed. R. Civ. Proc. 23(h) ...................................7, 12, 14-15, 29, 40, 43

Fed. R. Civ. Proc. 58 .................................................................................1

Other Authorities

Brunet, Edward,
    *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*,
    2003 U Chi. Legal F. 403 ............................................................... 16, 37

Fitzpatrick, Brian,
    *The End of Objector Blackmail?*, 62 VANDERBILT L. REV. 1623 (2009) ..................37

Issacharoff, Samuel,
    *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805 (1997) .......................................25

Jones, Ashby,
    *A Litigator Fights Class-Action Suits*,
    Wall St. J. (Oct. 31, 2011) ................................................................15

Karlsgodt, Paul & Raj Chohan,
    *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*,
    BNA: Class Action Litig. Report (Aug. 12, 2011) ..................................................16

Liptak, Adam,
    *When Lawyers Cut Their Clients Out of the Deal*,
    N.Y. TIMES, Aug. 13, 2013, at A12 ........................................................15

Sale, Hillary A.,
    *Judges Who Settle*, 89 WASH. U. L. REV. 377 (2011) ..................................................25

## Statement of Subject Matter and Appellate Jurisdiction

Defendant Facebook successfully removed this case to federal court under 28 U.S.C. § 1453(b). Dkt. 1.[1] The district court had diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the case is a class action; at least one member of the national class is a citizen of a state different from one defendant; the number of members of all proposed plaintiff classes in the aggregate is at least 100; the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and no exception to 28 U.S.C. § 1332(d)(2) applies. Dkt. 1 at 2. For example, named plaintiff Angela Fraley is a citizen of Washington, class member and objector Sam Kazman is a citizen of Virginia with a business address in Washington, D.C., while defendant Facebook, Inc., is a Delaware corporation with its principal place of business in California. *Id.*; ER91.

The court's final judgment, pursuant to Fed. R. Civ. Proc. 58, issued on September 19, 2013. Dkt. 368. Objector-Appellant Sam Kazman filed a timely motion for an award of attorneys' fees and an incentive award on September 9, 2013. ER32. On February 28, 2014, the district court denied Kazman's motion for attorneys' fees. ER1. On March 27, 2014, Kazman filed a notice of appeal. ER26. This notice is timely under Fed. R. App. Proc. 4(a)(1)(A). This court has appellate jurisdiction because this is a timely-filed appeal from the district court's order denying Kazman's motion for fees, which was a final decision under 28 U.S.C. § 1291 collateral to the

---

[1] Dkt. xxx refers to the entry number in the 11-cv-01726 docket below . ERxxx refers to the page number in Kazman's contemporaneously-filed excerpts of record.

final judgment. *See, e.g.*, *Mount Hope Church v. Bash Back*, 705 F.3d 418, 424 (9th Cir. 2012); *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988).

## Statement of the Issues

1.    This Court holds it is legal error for a district court to deny an award of attorneys' fees to objectors on the grounds that the district court had relied on "its own analysis of the case law." *Rodriguez v. Disner*, 688 F.3d 645, 660 (9th Cir. 2012) ("*Rodriguez II*").

(a)    Kazman successfully objected that class counsel sought a percentage of recovery of the gross settlement fund rather than the net settlement fund. Did the district court commit a reversible error of law in holding that Kazman was not entitled to fees or an incentive payment for that objection because his objection—made only by Kazman out of dozens of objectors—was "only commonsense"? (Raised at Dkt. 363 (ER34); ruled on at ER2-3.)

(b)    Kazman successfully objected that class counsel's new theory of valuation of injunctive relief was fallacious and should not give rise to an augmentation of attorneys' fees. Did the district court commit a reversible error of law in holding that Kazman was not entitled to fees or an incentive payment for that objection because the court had previously expressed concern whether plaintiffs could prove the value of injunctive relief? (Raised at Dkt. 363 (ER34); ruled on at ER2.)

2.     In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ("*Rodriguez I*"), this Court held that creating a class benefit of $325,000 in a $49 million settlement merited attorneys' fees. Did the district court err as a matter of law in holding that an objection that created about $300,000 of benefit in a $18.8 million settlement was "*de minimus* [sic]" and thus not entitled to fees or an incentive payment? (Raised at Dkt. 363 (ER34); ruled on at ER3.)

3.     Are objectors who have made a substantive objection entitled to attorneys' fees and an incentive payment for the benefit created when settling parties voluntarily modify a settlement after objections are filed to address that substantive objection, or may settling parties defeat a claim for objectors' attorneys' fees by making a self-serving assertion that the objection did not "cause" the post-objection modification?  (Raised at Dkt. 363 (ER34); ruled on at ER2.)

## Standard of Review

A district court's decision to grant or deny attorneys' fees is reviewed for abuse of discretion. *Rodriguez v. Disner*, 688 F.3d at 653. An error of law is a *per se* abuse of discretion. *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 956 (9th Cir. 2013). Ignoring controlling precedent is a clear error of law. *See Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). A district court abuses its discretion if it "rests its decision on a clearly erroneous finding of fact." *Crawford v. Astrue*, 586 F.3d 1142, 1147 (9th Cir. 2009).

## Statement of the Case

### A.    Plaintiffs sue over Facebook's "Sponsored Stories."

Facebook maintains an eponymous online social network whose users display miscellaneous information to others, and seek it from others in turn. *See* Dkt. 16 at 3-4. For example, users can "Post" information including text and images that can be seen by other Facebook users with whom that user has connected. Dkt. 1 at 11. The relationship between the connected user is called "Friend." *Id.* at 10. The information posted by the user is displayed in the user's "News Feed." *Id.* In addition, users can "Like" an item that has been posted or "Check-in" to display the user's geographical location; both such actions are displayed in the user's News Feed. *Id.* at 11.

In January 2011, Facebook began a new advertising service called "Sponsored Stories." *Id.* The advertising service turned a user's online action, e.g., Post, Like or Check-in, into endorsed advertisements. *Id.* When a user Posted, Liked or Checked-in, and such content related to an advertiser, the content (along with the user's profile image and name) appeared as an endorsement in a paid advertisement that could be viewed by the user's Friends. *Id.* A user's action was translated to an endorsement of an advertiser. *Id.* But users might "Like" a page for reasons other than "liking" the page's provider; for example, one class member used the "Like" button to follow the social-media interactions of prominent politicians he didn't actually like because he was interested in the politicians' campaigns. ER93.

In 2011, Plaintiffs filed in California state court a putative class action complaint against Facebook, alleging that the Sponsored Stories service was unfair

and unlawful under California state law because Facebook's procedures for consent were inadequate. Dkt. 1 at 2-4. Plaintiffs sought over $92 billion in statutory damages ($750 per incident, Cal Civ. Code § 3344) on behalf of a class of 123 million Facebook users. Dkt. 1 at 4; Dkt. 22 at 5, 23, Dkt. 253 at 24.

## B.     The parties settle, then revise their settlement.

On June 20, 2012, Plaintiffs moved for the district court to preliminarily approve a settlement ("First Settlement") that entailed injunctive relief, $10 million to *cy pres* recipients, Plaintiffs' attorneys' fees and costs totaling $10.3 million, and a release of the complained-about $92 billion liability. *See* Dkt. 181 at 3, 5-9; ER111-17. The injunctive relief required Facebook to revise Facebook's Terms of Use and provide some user control of Sponsored Stories. Dkt. 181 at 6-8.

The district court denied approval of the First Settlement on August 17, 2012. Dkt. 224. The district court expressed several concerns. *First*, the court instructed the parties to provide legal support justifying a settlement that provided *cy pres* relief without direct monetary relief to the class. Dkt. 224 at 3. The district court expressed concerns about the adequacy of the amount of the *cy pres*, in light of potential recovery. *Id.* at 4-5.

*Second*, the district court also expressed concerns regarding the First Settlement's provision permitting class counsel to request up to $10.3 million in fees and costs. *Id.* at 6. The court questioned the ratio of the amount of attorney fees specified in the "clear sailing" agreement (permitting $10 million in attorneys' fees without objection by Facebook) and the economic value of the *cy pres* payment. *Id.*

at 7. The court rejected plaintiffs' argument that the $10.3 million request could be justified with by plaintiffs' $103,200,000 valuation of the injunctive relief because the estimation was wrongfully based on a dollar value to Facebook for using Sponsored Stories for two years. *Id.* at 6-7. The court explained that the "dollars Facebook derived from using its members' names and likenesses (allegedly wrongfully), cannot serve as measure of the economic value realized by members through obtaining the ability to 'opt out' from allowing Facebook to do so in the future." *Id.* While the district court rejected the valuation, it invited the parties to submit alternative theories of valuing the proposed injunctive relief when renewing approval. *Id.* at 7. The district court was also concerned with the fact that any attorneys' fees not awarded would revert to Facebook. *Id.* The district court's rejection relied heavily on this Court's landmark decision in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011), a case argued by Kazman's counsel. *Id.* at 5.

The parties revised the settlement ("Revised Settlement") and, on October 5, 2012, moved for preliminary approval. Dkt. 235; ER106-109. The Revised Settlement provided for a "settlement fund" of $20 million. Revised Settlement § 1.27 (ER107). After subtracting class counsel's fees and costs, representative plaintiffs' incentive awards, and administrative costs from the $20 million, class members could make claims of $10 per claimant from the remainder or "net settlement fund." *Id.* §§ 1.18, 2.3 (ER106, ER108-09).

If claims exhausted the "net settlement fund," disbursements to claimants could be decreased *pro rata* down to $5. *Id.* § 2.3(a)(i) (ER108). If claimants' *pro rata*

share was less than $5, then the Revised Settlement gave the district court the discretion to order the entire "net settlement fund" be distributed to *cy pres* recipients. *Id.* § 2.3(a)(ii) (ER108-09). Even if the court declined to so order, the entire "net settlement fund" would be disbursed to *cy pres* recipients if making any prorated distribution to claimants became "not economically feasible." *Id.* § 2.3(a)(iii) (ER109).

If payment of $10 to all claimants would not exhaust the "net settlement fund," any remaining funds would be disbursed to *cy pres* recipients. *Id.* § 2.3(b) (ER109). The Revised Settlement permitted the district court to order increased *pro rata* payments above $10, with remaining proceeds to be distributed to *cy pres* recipients. *Id.*.

The revised settlement deleted the objectionable "clear sailing" clause, thus permitting Facebook to oppose the Rule 23(h) request.

The court granted preliminary approval on December 3, 2012. Dkt. 252.

On December 21, 2012, Plaintiffs moved for an award of attorneys' fees in the amount of $7.5 million. Dkt. 253 at 39. Plaintiffs assigned value to the injunctive relief between $57.4 and $145.1 million; they proffered three alternative theories for assigning value to the injunctive relief: (1) "fair market value" calculation (fair market value of class members' endorsements in Sponsored Stories); (2) "real option" calculation (value of class members' future ability to choose not to participate in Sponsored Stories); and (3) minimum $1 valuation (revised Facebook terms and options worth at least $1 for each member). *Id.* at 4. Plaintiffs argued that under the "Percentage of Recovery" method, the injunctive relief justified the $7.5 million fee

request and without the injunctive relief, the fees constituted 37.5% of the $20 million "settlement fund." *Id.* at 19-20.

## C.     **Sam Kazman objects.**

Class member Sam Kazman timely objected to the settlement approval and fee request on May 2, 2013. ER70; ER90. Kazman was represented *pro bono* by Theodore H. Frank of the non-profit Center for Class Action Fairness, who appeared at the fairness hearing on Kazman's behalf. ER49; ER92.

Kazman argued that all of the alternative theories plaintiffs proffered for assigning value to the injunctive relief were invalid. ER78-80. Specifically, Plaintiffs' "fair market value" calculation was wrong because it was improperly based on cost to the defendant, which is not a benefit to the class; the "real option" calculation was also improperly based on Facebook profits and unreliably presumed a future market for purchasing members' Sponsored Stories; and the $1 valuation was randomly chosen without basis. *Id.*

Kazman further argued that the attorneys' fees should be measured against the $17.45 million class recovery, not the $20 million gross "settlement fund." ER72-74. Plaintiffs' 37.5% fee calculation improperly treated administrative costs as class recovery. *Id.* When the anticipated $2.55 million administrative costs are subtracted from the $20 million "settlement fund," the actual class recovery amount was $17.45 million. ER73. When properly calculated, class counsel's $7.5 million fee request amounted to 43% of the class recovery, well beyond the Ninth Circuit's 25%

benchmark. Dkt. 310 at 14; ER74-76. Kazman was the only objector who made this objection.

Kazman also urged the district court to order an increased disbursement to claimants—the maximum *pro rata* recovery possible so that there would be no *cy pres*—instead of acquiescing to the disbursement of unclaimed funds to *cy pres* recipients. Dkt. 310 at 17-21 (ER85-89). *Cf. Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468 (5th Cir. 2011). Again, Kazman was the only objector who made this objection in a substantive manner.

## D.    Plaintiffs move for final approval and respond to objections.

About 600,000 class members made claims for $10. On June 7, 2013, Plaintiffs moved for final approval of the revised settlement. ER66. They requested that the district court exercise its discretion to increase the per capita distribution of the remainder settlement fund to $15 per class member, rather than $10 per capita as the settlement provided by default. ER67; ER69.

Also on June 7, 2013, Plaintiffs filed a response to the several objections raised by class members. ER63. Though there were numerous objections, much of plaintiffs' response focused on Kazman's objections, mentioning Kazman or his counsel 49 times. Dkt. 343. There, Plaintiffs disputed Kazman's proposal to increase disbursement to class members, arguing that the distributions to the class should not be increased above $15 because the "actual damages" per class member were $0.94 to $1.45. ER68. Plaintiffs argued against maximizing distributions to exhaust the settlement fund notwithstanding the legal backdrop of $750 statutory damages per

class member. ER69; Dkt. 336 at 25. Plaintiffs also contested Kazman's argument that administrative costs should not be counted as class recovery for the purpose of calculating attorneys' fees. ER65.

Facebook filed its own opposition to Plaintiffs' motion for attorneys' fees in which it argued that the district court should appraise attorneys' fees under the lodestar method (not the percentage-of-recovery method) because California law (not federal law) governed. ER50. Facebook's opposition to the lodestar calculation, however, mirrored many of Kazman's arguments regarding lodestar for crosscheck purposes. *Compare* ER60-62, *with* ER81-83; *also compare* ER55-58, *with* ER83-84.

### E.    The district court approves the Settlement.

The district court held a fairness hearing on June 28, 2013. ER45. Because time was limited and there were multiple objectors, Kazman agreed with the other objectors to rely on the briefs and use the fairness hearing to focus on *cy pres* issues as well as Rule 23(a)(4) issues not relevant to this appeal. ER49. The court expressed concern over the fairness of an increase in the award to class members because the settlement was noticed to the class as providing $10 distributions. ER46-47.

On August 26, 2013, the district court granted final approval of the settlement, and granted in part Plaintiffs' motion for attorneys' fees. ER12; ER5. The court increased the per capita disbursement to $15 from the initial baseline disbursement of $10. ER17. The court adopted a percentage of recovery approach as Kazman argued, rather than the lodestar approach sought by Facebook. ER7. The district court declined to rely on Plaintiffs' valuation of injunctive relief when calculating Plaintiffs'

fee award. ER8-9. Instead, as Kazman urged, the district court awarded a percentage of the funds remaining *after* the exclusion of administrative costs, rejecting Plaintiffs' approach of awarding a percentage of the $20 million gross settlement fund. ER8. Specifically, the district court awarded attorneys' fees at the 25% benchmark of the settlement funds remaining after deduction of administrative expenses, costs, and incentive awards. ER11.

## F.     Objector Kazman moves for attorneys' fees and an incentive.

On September 9, 2013, Kazman moved for an award of attorneys' fees to be paid from this amount, seeking $135,000—less than 5% of the maximum class benefit attributable to his objection—with any amount over $50,000 returning to the class recovery. ER33-34. Kazman argued that based on Kazman's argument that the percentage-of-recovery class counsel fee should be calculated based on actual class recovery (and not administrative expenses), class counsel would receive between $4.5 million and $4.7 million (approximately $18.8 million[2] in net settlement fund after expenses and administration costs) instead of the $7.5 million requested by plaintiffs. *Id.* This resulted in a benefit to the class of approximately $2.8 million. *Id.*

---

[2] Plaintiffs initially estimated administrative expenses to be upwards of $2.55 million. Dkt. 253 at 20. Apparently, the district court's order holding that class counsel could not collect a commission on fees had a beneficial effect: plaintiffs later asserted those expenses to be $1,217,500 ($900,000 claims administration, $280,000 litigation costs, $37,500 incentive awards), less than half their original estimate. ER67. This was ultimately revised down to $1,184,456. Dkt. 379 at 13-14.

In addition, Kazman argued that he should be credited for the upward *pro rata* modification, made only after his objection, that resulted in an additional $3 million being given to the class. ER33-34.

The requested $50,000 was less than Kazman's attorneys' lodestar, even after omitting travel time, time expended by a summer associate on research, and time spent on the fee petition and this appeal. ER41-42.

Kazman argued for an incentive payment as well. ER36.

The Center, as a non-profit, requests fees only a small percentage of the time that they are legally entitled to fees, and has in the past donated fees to augmenting class recovery. ER39; ER43. Because the Center is non-profit, it cannot settle its objections for a *quid pro quo* cash payment to withdraw, as many professional objectors do; it is also limited by tax law in the amount of fees it may recover in a five-year period. ER93; ER39; ER44.

Kazman asked that his award of fees be deducted from class counsel's Rule 23(h) award so that the class would not be double-billed. ER35-36. Class counsel, by contrast, argued that any fee award should come from the class's coffers.

No other objectors argued that they were entitled to attorneys' fees.

### G.     The district court denies Kazman's fee request.

On February 28, 2014, the district court denied Kazman's motion for attorneys' fees and an incentive payment. ER1. The district court held that Kazman was not entitled to fees because the settlement had already contemplated increasing cash disbursement to claimants and because Kazman failed to address supposed unfairness

from increasing the award (ER2); the court had already expressed skepticism about the injunctive relief valuation (ER2); and applying the percentage-of-recovery to actual class recovery ($20 million settlement fund less expenses) in calculating the fee award was "commonsense" and only decreased the fee award by slightly less than $300,000, and thus was "*de minimus* [*sic*]" and not worth fees (ER3).

On March 27, 2014, Kazman timely appealed to this Court from the district court's decision denying his motion for attorneys' fees. ER26.

Meanwhile, multiple sets of other objectors appealed from the final judgment approving the settlement and class counsel's attorneys' fees. Those related appeals, consolidated with each other under lead appeal No. 13-16918, are pending and can potentially moot Kazman's fee request if the Ninth Circuit mandates that the settlement be rejected.

## Summary of Argument

In a substantive and meaningful filing, Sam Kazman successfully objected in part to the allocation plan and excessive attorney-fee request of a class-action settlement that the district court ultimately approved. After his objection, the parties modified the settlement to increase the share of cash realized by the class as Kazman demanded, and the district court adopted several of Kazman's arguments over multiple competing theories of attorneys' fees calculations. As a result, the proportion of the settlement going to class members increased by over $3 million, and the amount going to *cy pres* instead of class counsel's pocket increased by about $2.8 million.

Out of the dozens of objectors, none claimed credit for these results, and only Kazman moved for attorneys' fees, which he was entitled to as a matter of Ninth Circuit law. *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ("*Rodriguez II*"). But the district court ignored that precedent, and misconstrued *Rodriguez II*'s predecessor, *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ("*Rodriguez I*"). These were errors of law requiring reversal.

Any argument that the district court or the parties would have implemented Kazman's objections anyway, and therefore Kazman is not entitled to fees, puts objectors in an impossible situation. *First*, if the revised proposed settlement and fee request was so obviously abhorrent in the first instance, that is effectively a claim that the settling parties acted frivolously. It would be perverse if frivolous settlement provisions and arguments for excessive attorneys' fees put class counsel at less risk of paying objectors' fees than colorable arguments, and further perverse to deter objectors from objecting to the worst settlements because it might be held "commonsense" that those settlements' abuses will be known to their judges. *Second*, objectors cannot possibly read the minds of district court judges and know that their objections will be superfluous; nor can they (or should they be able to) conduct discovery into the judicial opinion process to test whether a judge really was or was not influenced by an objection. Indeed, the district court's "commonsense" claim, raised *sua sponte*, is contradicted by the fact that district court judges in the Ninth Circuit—including the *district court judge in this case*—regularly approve Rule 23(h)

requests with the abusive provisions and valuations Kazman successfully objected to here.

Accordingly, the district court's decision denying appellant Kazman's motion for attorneys' fees should be reversed and remanded with instructions to calculate a reasonable award of attorneys' fees to Kazman.

Kazman asked that his award of fees be deducted from class counsel's Rule 23(h) award so that the class would not be double-billed. Class counsel vociferously contested that, but the question was mooted by the district court's denial of Kazman's request. This Court should instruct the district court on remand that Kazman's attorneys' fees are to be paid from the amount awarded to class counsel, rather than being debited from the remainder of the net settlement fund.

## Preliminary Statement

Attorneys with the non-profit Center for Class Action Fairness are representing Kazman *pro bono*. The Center's mission is to litigate on behalf of class members against unfair class-action procedures and settlements, and it has won millions of dollars for class members. *See, e.g.,* Adam Liptak, *When Lawyers Cut Their Clients Out of the Deal*, N.Y. TIMES, Aug. 13, 2013, at A12 (calling Center attorney Frank "the leading critic of abusive class action settlements"); Ashby Jones, *A Litigator Fights Class-Action Suits*, WALL ST. J. (Oct. 31, 2011); *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (praising the Center's work).

Unfortunately, class counsel below resorted to inventing false *ad hominem* attacks against Kazman's non-profit counsel and Kazman himself. *E.g.*, Dkt. 343 at 4; Dkt. 379 at 1. Such *ad hominems* are, of course, irrelevant to the merits of Kazman's appeal or successful objection, but, to the extent class counsel continues to argue that the identity of Kazman's non-profit counsel is somehow relevant, it cuts in favor of his arguments, as his counsel has achieved success in the majority of objections he has brought, including eight of the ten federal appeals of class action settlements he has argued that have been decided as of this briefing, including four for four in the Ninth Circuit. *E.g., In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011); *Nachshin v. AOL, LLC,* 663 F.3d 1034 (9th Cir. 2011); *In re HP Inkjet Printer Litg.,* 716 F.3d 1173 (9th Cir. 2013)*; In re Magsafe Apple Power Adapter Litig.*, No. 12-15757, 2014 U.S. App. LEXIS 7708 (9th Cir. Apr. 8, 2014) (unpublished).

Plaintiffs' challenge of the Center's motives as an objector is perhaps an attempt to tar Kazman's objection with those of "professional objectors," for-profit attorneys who file objections to blackmail plaintiffs' attorneys for payment in exchange for withdrawing their objections. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: Class Action Litig. Report (Aug. 12, 2011) (distinguishing the Center from professional objectors); Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. Chi. Legal Forum 403, 437 n.150 (public interest groups are not "professional objectors"). Neither the Center nor any of its attorneys have ever agreed to a *quid pro quo* settlement of an objection. ER43-44.

The difference between a "professional objector" and a public-interest objector is a material one. Under the current federal rules, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection; they can profit from a meritless objection by being paid to cease delay. In contrast, a non-profit public-interest attorney representing objectors must triage dozens of requests for *pro bono* representation, loses money on every losing objection (and most winning objections) brought, can only raise needed charitable donations by demonstrating success, and has no interest in wasting limited resources and time on a meritless objection. ER93-94. This appeal is brought in good faith to overturn the denial of Kazman's motion for attorneys' fees. Sound public policy requires that good-faith objectors who bring substantive meritorious objections should be compensated in an amount to incentivize counsel to represent class members unfairly treated; the way to deter the problem of bad-faith objectors is to establish that substantive good-faith objections are a viable business model.

## Argument

## I.    Ninth Circuit law entitles Kazman to attorneys' fees because his objection realized a substantial benefit for the class.

Class counsel proposed a settlement in this case that would have paid it $7.5 million, the class about $6 million, and *cy pres* recipients about $4 million.

> Fortunately the settlement, including the amount of attorneys' fees to award to class counsel, must be approved by the district judge presiding over the case; unfortunately American judges are accustomed to presiding over adversary proceedings. They expect

> the clash of the adversaries to generate the information that the judge needs to decide the case. And so when a judge is being urged by both adversaries to approve the class-action settlement that they've negotiated, he's at a disadvantage in evaluating the fairness of the settlement to the class.
>
> Enter the objectors. Members of the class who smell a rat can object to approval of the settlement.

*Eubank v. Pella Corp.*, No. 13-2091, -- F.3d --, 2014 U.S. App. LEXIS 10332 at *8 (7th Cir. Jun. 2, 2014). If "as a consequence a settlement more favorable to the class" is approved, "the objectors will receive a cash award that can be substantial." *Id.* at *9. But the district court broke the bargain in this case.

Ninth Circuit law instructs that objectors are entitled to attorneys' fees when they confer a substantial benefit to the class. *See Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) ("*Rodriguez II*"); *Rodriguez v. West Publishing Corp*, 563 F.3d 948, 963 (9th Cir. 2009) ("*Rodriguez I*") (reversing denial of fees because objectors are entitled to fees when their efforts increase the fund or substantially benefit the class) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002)); *see also Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (error to deny fees to objector that benefited class by successfully arguing for reduction in class counsel's fees). Objector Kazman is entitled to a share of the total attorneys' fees awarded in this case because his objection successfully realized a significant pecuniary benefit for the class.

"[I]t is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements." *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974); *accord Amchem Prods. v. Windsor*, 521 U.S.

591, 621 (1997) (noting the "benefit of adversarial investigation" in vetting class action settlements); *Eubank v. Pella Corp.*, -- F.3d --, 2014 U.S. App. LEXIS 10332, at *9 (7th Cir. Jun. 2, 2014); *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003); *In re Prudential Ins. Co. Am. Sales*, 278 F.3d 175, 202 (3d Cir. 2002) (observing that "a lawyer with objector status plays a highly important role for the class and the court because he or she raises challenges free from the burden of conflicting baggage that Class Counsel carries"); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (crediting objectors' ability to "[a]ssur[e] fair and adequate fee awards"). Objectors "reintroduc[e] an adversarial relationship into the settlement process and thereby improve[e] the chances that a claim will be settled for its fair value." *Vollmer*, 350 F.3d at 660. Thus, awarding fees to objectors when they are successful reflects the important role objectors assume.

Given the important role of objectors, sound public policy requires that good-faith objectors who bring substantive meritorious objections should be compensated in an amount to incentivize counsel to represent class members unfairly treated. Kazman's objection set forth numerous arguments that substantially benefitted the class entitling him to attorneys' fees. The district court erred in denying Kazman attorneys' fees for three independent reasons.

**A.** **The district court adopted two legal theories championed by Kazman that realized $2.8 million to the class, and erred as a matter of law in failing to consider this, by itself, to be class benefit.**

Class counsel's fee motion argued that their $7.5 million request was 37.5% of the $20 million "settlement fund," which fund included administrative costs. Dkt. 253 at 19. Kazman objected to this calculation. Citing *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013), among myriad other authorities, Kazman explained that the percentage-of-recovery method should calculate class counsel's fee based on what the class members *actually receive*—the recovery—and not the gross fund. ER72-74. Kazman argued that the fee request should be measured against the $20 million "settlement fund" *less* the $2.55 million estimated administrative costs and therefore, that the $7.5 million request amounted to 43% of the class recovery. Kazman further argued that the percentage should be decreased to align with the Ninth Circuit's 25% benchmark. ER72-76.

Defendant Facebook's opposition to attorneys' fees ignored percentage-of-recovery analysis altogether. ER50. Kazman was the only objector to substantively set forth this position,[3] which was ultimately adopted by the district court, and to which

---

[3] Certain other objectors touched on the disproportionate attorney fee request, but did not specifically advocate for exclusion of administrative expenses in calculating fees. *See, e.g.*, Dkt. 312 (arguing that Plaintiffs' sought-after fees were 62.5% as large as the amount expected to be paid to class members, and expressly incorporating all of Kazman's objections). No one disputes that Kazman's objection on this subject was by far the most substantive; no other objector claimed entitlement to fees based on the district court's reduction of the excessive fee award. Too, plaintiffs' response to the objections spent a great deal of time focusing on the

the district court drew no attention until its order disposing Plaintiffs' motion for attorneys' fees. ER7-8. The court concluded that "[a]lthough the percentage recovery is apparently sometimes calculated prior to any deduction for costs and settlement administration expenses, in this instance it appears more appropriate and reasonable to apply the benchmark percentage to that portion of the settlement that will actually be distributed to the class, either directly or through *cy pres*." *Id.* Accordingly, instead of the $7.5 million requested fee, the court awarded class counsel less than $4.7 million (25% of the approximate $18.7 million in net settlement funds after expenses and administration costs). Kazman's argument resulted in a benefit to the class settlement fund of over $2.8 million. ER33.

Yet when considering Kazman's motion for attorneys' fees, the district court asserted that Kazman's objection was "only commensense that a percentage-based fee should be based on the amount actually recovered by the class (directly or through *cy pres*) and not include a percentage of the sums going to pay costs." ER3. Therefore, "even though Katzman [sic] may have been the only litigant to articulate this point, his objection did not rise to the level of a material contribution warranting a fee award." ER3.

With respect to the 25% benchmark and valuation of the settlement, the district court argued that it was already considering this issue as early as the

Kazman's objections, mentioning or citing to Kazman's counsel Frank a total of 49 times; class counsel's section of the brief defending their excessive fee request focused almost exclusively on Kazman's objection. Dkt. 343. (In comparison, class counsel mentioned the Shane objection from a competing class counsel only 18 times. *Id.*)

preliminary approval stage, and that "plaintiffs ultimately were not able answer the previously-expressed concerns was not the result of Katzman [*sic*] having echoed them in his objections." ER2.

The district court's "commonsense" rationale, and implication that because it would have reached the same conclusion on both of Kazman's objections regardless of whether Kazman objected, directly contradicts *Rodriguez I* and *II*, and is legally wrong for two reasons.

*First*, the district court erred to the extent it was suggesting that Kazman's theory was so indisputable it did not merit reward. Kazman's theory that administrative expenses should be excluded when calculating attorneys' fees is correct, but not settled law. It is indeed common sense that Plaintiffs' attorneys should not be paid an effective commission on administrative costs of settlement as if such costs were a class benefit,[4] but many district court judges—including those in this Circuit—do not recognize Kazman's theory as commonsense. *See, e.g., Nguyen v. Radient Pharms. Corp.*, No.11-cv-00406, 2014 U.S. Dist. LEXIS 63312, at *26-*27 (C.D. Cal. May 6, 2014) (disagreeing "that the appropriate method of calculating the benchmark is

---

[4] A major argument for Kazman's proposed approach is that it incentivizes class counsel to seek the most efficient level of expense for settlement administration and notice, an incentive class counsel does not have when they receive a *de facto* commission on every dollar spent on the settlement administration. We see firsthand in this case that benefit: whereas before Kazman's objection, class counsel was estimating a $2.55 million settlement administration expense, after Kazman put the possibility that class counsel would not collect fees on such expenses, the settlement administration expense suddenly dropped to $1.2 million. Dkt. 253 at 20; ER67.

necessarily the net settlement after costs"); *In re Online DVD Antitrust Litig.*, No. 12-15705 (*appeal pending* 9th Cir., argued Feb. 13, 2014) (Kazman's counsel arguing on appeal for Ninth Circuit rule requiring this approach after district court rejected it); *Redman v. RadioShack*, No. 14-1470 (*appeal pending* 7th Cir., scheduled for argument Sep. 8, 2014) (same for Seventh Circuit). The district court judge in this case had previously strayed from this "commonsense" principle himself. *See, e.g., Petersen v. Lowe's Hiw, Inc.*, No. C 11-01996, 2012 U.S. Dist. LEXIS 123018, at *11-*13 (N.D. Cal. Aug. 24, 2012) (Seeborg, J.) (awarding 22% of the gross settlement fund).

Indeed, Kazman's appraisal theory was not common sense to Plaintiffs, who advocated for their fees to be a percentage of a gross settlement fund that included administrative expenses. Dkt. 253 at 19; ER65. If Kazman's theory had been so "commonsense," then plaintiffs should have been reprimanded for advocating a frivolous position in opposition. Instead, the district court punished Kazman for asserting a sound and resourceful argument.

Similarly, plaintiffs persisted in arguing that their injunctive relief was meaningful and valuable, making new arguments they hadn't previously made. Dkt. 253 at 28-31. Kazman's objection substantively rebutted proposed valuative methodologies for the injunctive relief that the plaintiffs had not even proposed at the time of the Court's intial skepticism. ER78-80. Furthermore, Kazman's arguments unquestionably expanded on the Court's earlier skepticism. *Cf. In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011) ("appreciat[ing] Objectors['] further development" of argument initially raised by the court and

awarding 10% of the class benefit). If Kazman's objections were so obvious, nothing stopped plaintiffs from preempting the objections before they were made by refraining from an abusive fee request. Either the request was so bad-faith that plaintiffs should have been sanctioned for making it, or it was sufficiently colorable that objectors provided benefit by opposing it.

*Second*, Kazman should be awarded for presenting his theory even if the court would have applied such theory *sua sponte* without Kazman's objection. The Ninth Circuit does not require clairvoyance from objectors regarding what arguments the court will spontaneously advance. In *Rodriguez II*, the Court held that it was legal error for a district court to deny attorneys' fees to an objector "on the ground that the court relied on 'its own analysis of the case law.'" 688 F.3d at 660. The district court below never mentioned *Rodriguez II*, and attempted to distinguish *Rodriguez I* by arguing that the Ninth Circuit in *Rodriguez I* "merely held that the record in that case demonstrated that the objections had, **as a factual matter, affected the trial court's analysis** and resulted in a benefit to the class." ER3 (emphasis added). The district court's interpretation misses the mark. Such a reading would require every objector to play the "what am I thinking?" game with the district court: the objector would have to prove what the court had been thinking before the objection and how the objection changed the judge's mind. Obviously, objectors are not going to be allowed to depose judicial officers; a legal rule for fees should not put them in an impossible bind.

The Seventh Circuit explained why such a showing is not required when awarding attorneys' fees to objectors. *Reynolds v. Beneficial National Bank* held that a

court cannot deny objectors' fee on the basis that the court "had already decided, without telling anybody" that it was going to advance the objector's argument. 288 F.3d 277, 288 (7th Cir. 2002). This is because "objectors must decide whether to object without knowing what objections may be moot because they have already occurred to the judge.'" *Id.* Even the most logical arguments must sometimes be raised by objectors. Many commentators have remarked how all the incentives—docket management, familiarity with the settling parties, lack of incentive of objectors to make substantive objections—guide district courts toward approval of settlements. *See* Samuel Issacharoff, *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805, 829 (1997) ("No matter how virtuous the judge, the fact remains that courts are overworked, they have limited access to quality information, and they have an overwhelming incentive to clear their docket. They cannot reliably police the day-to-day interests of absent class members."); Hillary A. Sale, *Judges Who Settle*, 89 WASH. U. L. REV. 377, 411 (2011) ("Busy judges will then face their own personal and professional conflicts with resisting and scrutinizing settlements"); *Eubank, supra.* For this reason, objectors can provide a "critically valuable service." *Lane v. Facebook*, 696 F.3d 811, 830 (9th Cir. 2012) (Kleinfeld, J. dissenting); *accord Eubank*, 2014 U.S. App. LEXIS 10332 at *9.

This Court's decision in *Rodriguez I* solidifies this principle. In *Rodriguez I*, the objectors challenged incentive agreements between class representatives and class counsel. 563 F.3d at 959. "[T]he incentive agreements came to the fore when Objectors pounced on them in opposing class counsel's motion for incentive awards to the class representatives. This happened after preliminary approval of the

settlement." *Id.* "The court was not focused on the incentive agreements before Objectors took exception to them after the motion to award payments to the class representatives was filed." *Id.* at 963. This Court held that it was clear error to deny the objectors' "request for fees on the footing that Objectors' counsel 'did not add anything' to its decision to deny incentive awards." *Id.* Here, the denial of Kazman's request for fees followed the same pattern. The issue of net versus gross settlement appraisal came to the fore when Kazman pounced on it in opposing class counsel's motions for final approval and attorneys' fees after preliminary approval of the settlement. ER72-74. The district court admits that it was not focused on the issue before Kazman's objection, filed after the motion to award attorneys' fees to class counsel. ER2. And it was clear error for the district court to find that Kazman did not add anything to its analysis and deny Kazman fees on that basis.

This principle should be extended to issues raised at the preliminary approval stage. While the district court may have expressed skepticism as to the valuation of the injunctive relief, class counsel persisted in making the argument without anyone suggesting that they violated Rule 11 in doing so. Objectors should not be required to guess whether a district court's musings at the preliminary approval stage will ultimately result in the correct outcome. District courts often give excessive valuation to illusory injunctive relief, often without exercising their fiduciary duty to the class to scrutinize implausible claims by the settling parties, and there is a circuit split over the deference given to implausible findings that ignore substantive objections. *Compare, e.g., Laguna v. Coverall N. Am., Inc.*, No. 12-55479, -- F.3d --, 2014 U.S. App. LEXIS

10259 (9th Cir. Jun. 3, 2014) *with Eubank*, 2014 U.S. App. LEXIS 10332 *and In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013). It would be one thing if Kazman's objection had been cursory, but there is no dispute that he submitted a substantive, meaningful objection that class counsel took seriously enough to spend much of their brief contesting.[5] ER70-89; Dkt. 343.

Such a rule is good public policy for another reason. If class counsel can make a claim for excessive attorneys' fees that should be rejected for "obvious" or "commonsense" reasons without the risk of paying attorneys' fees to objectors who successfully challenge the abusive requests, they have no incentive not to make the abusive request in the first place. "Heads I win, tails don't count." It would be perverse if objectors' fee awards were structured so that the most abusive settlements should only be objected to *gratis*. If this Court gives notice that abusive fee requests will presumptively result in fee awards to successful objectors, then class counsel will

---

[5] Similarly, while other objectors raised the 25% benchmark in their objections and made arguments against the valuation of injunctive relief, no other objector claims that it was his or her objection that benefited the class or disputes that Kazman's objection benefited the class. Had such claims been made, then a court might wish to consider whose objection was the most substantive; consider whether one objector was free-riding off of the work of another; or consider dividing the valuation of the common benefit amongst the objectors claiming benefit creation. *E.g., In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741 (7th Cir. 2011) (partitioning the fee award between objector's counsel and class counsel based on benefit conferred). But it cannot be the case that the fact that once multiple objectors raise an issue, the second objection deprives the first objector of her entitlement to fees and *vice versa*. Just as objectors cannot guess what a judge may decide, objectors cannot anticipate whether other objectors will file substantive objections.

have less incentive to make abusive fee requests in the first place. *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

It is of no consequence whether the court considered the objection to be a revelation or just intuitive common sense: it is legal error for the court to deny attorneys' fees to an objector who was the singular and preeminent advocate of a position the court adopted to the material benefit of the class. It is further legal error for the court to deny attorneys' fees entirely just because the court had previously vocalized potential general problems with a fee request: without a definitive ruling at the preliminary approval stage, an objector has no reason to ignore new arguments made by in class counsel's request for excessive fees, much less waive the issue.[6]

### B. It was independent legal error for the district court to deny attorneys' fees for a material improvement in class recovery even if it was correct in holding that the benefit was "only" $300 thousand.

The district court, acknowledging the *Reynolds* principle, conceded that there was benefit to the class from one of Kazman's two arguments but wrongfully dismissed it as trivial because it was "slightly less than $300,000."[7] ER3. The court

---

[6] Such a position would perversely suggest that objectors in front of the ever-conscientious Judge Alsup in the Northern District of California would never be eligible for fees simply because whenever a class action is filed in his court, he sends out a cautionary list of factors that can torpedo a settlement. *E.g.*, *Arellano v. T-Mobile United States, Inc.*, No. C 10-05663, 2011 U.S. Dist. LEXIS 21441 (N.D. Cal. Mar. 3, 2011) (Alsup, J.).

[7] $296,114 is the reduction in the fee award if one calculates the reduction to be 25% times $1,184,456. Dkt. 379 at 13-14. But remember that class counsel

held that "applying the percentage recovery to the net settlement fund decreased the fee award by slightly less than $300,000 … while not a *de minimus* [*sic*] amount, it represents a very small percentage of the overall settlement funds going either to class members directly or *cy pres* recipients." ER3. That observation is irrelevant to the issue of whether Kazman is entitled to fees. An objector's entitlement to attorneys' fees is not triggered by an objection that's responsible for some minimum percentage "X" of the total settlement benefit. In *Rodriguez I*, for example, this Court noted that as a result of the objector's arguments, the "net effect was to leave $325,000 in the settlement fund." 563 F.3d at 963. But that $325,000 merited attorneys' fees, even though it was a smaller percentage of a larger *cash* settlement. *Id.* at 965. Here, even utilizing the court's low estimate of $300,000, Kazman realized 1.6% of the $18.7 million class recovery—but was asking to take home substantially less than 1.6% of class counsel's ultimate Rule 23(h) award.[8] The district court's "small recovery" rationale might be a reason to reduce the fee award from the requested $135,000 (all

---

originally planned to spend $2,550,000 on settlement administration before they had notice that they might not collect fees on it. The class benefit thus might have been as high as $1.6 million—the $0.3 million fee reduction plus the $1.3 million savings on settlement administration. Moreover, Kazman could not have known that the benefit would only be $296,114: class counsel gave notice that it would be requesting 37.5% of the anticipated $2,550,000 settlement administration costs, so Kazman's objection, when he made it, had a potential benefit of $956,250 to the class.

[8] In fact, the benefit realized by Kazman was $2.8 million*,* and thus Kazman realized 14.9% of the $18.7 million class recovery—and was requesting less than 5% of that additional recovery to be paid by class counsel, and then offering to cede the majority of that request back to the class settlement fund.

but $50,000 of which Kazman promised to donate to the class settlement fund) to something in the $74,000 range under the 25% benchmark, but it was independent legal error to hold that the supposedly small amount was a reason to deny Kazman fees entirely. A $300,000 benefit is still a benefit.[9]

### C.    Kazman was the first to suggest increased payments to claimants.

Kazman moved for attorneys' fees not only for the class benefit attributable to the court's adoption of his net settlement fund argument, but also for the court's adoption of other arguments most substantively advocated by Kazman.[10] For example, before the settling parties on the record recommended an increase of per capita class recovery to $15 from $10, Kazman had argued that the court should order such an increase. The district court, in denying Kazman's motion for fees, said the notion that "the cash payments were increased in response to his objection is not supported by the record" because "the settlement agreement always contemplated such an increase in the event the number of claims were low enough to permit it."

---

[9] The district court also dismissed Kazman's net settlement fund argument as "what amounted to one paragraph of his objection." ER3. This is clearly erroneous: the argument—unique to Kazman—was developed over several pages. ER72-74. More importantly, the number of words in an argument is wholly irrelevant, unless one wants to create a perverse incentive for logorrhea. The correct inquiry was the substantive merits of the argument and the resulting benefit to the class.

[10] A handful of other objectors also called for increasing the distribution to class members in *lieu* of *cy pres*; again, that Kazman's objection on this account was the most substantive is shown by class counsel's focus on Kazman's objection in defending the allocation. Dkt. 343 at 18-24.

ER2. But that fact of record justifies no inference about whether this settlement provision would be exercised, only that this possibility—like the possibility of a partial award of attorneys' fees—existed. Instead, the major objective evidence on the record—the chronological sequence of events—tends to suggest a causal relationship. *Cf, e.g., Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (causation "can be inferred from timing alone when there is a close proximity between the two [events]."") (Title VII retaliation).

Other portions of the record and the settlement's terms show that the settling parties preferred distribution to *cy pres* recipients over additional distribution to class members. First, even though the settlement allowed for the possibility of a court order that unclaimed funds be used to augment disbursements to class members instead of to *cy pres* recipients, the settlement did not include a recommendation from the parties that the court should do so. Absent affirmative judicial action, the default would have been for unclaimed funds to be distributed to *cy pres* recipients. Revised Settlement §2.3(b) (ER109). Second, the record shows that, even after drafting a revised settlement, both plaintiffs and defendants considered the default award of $10 per claimant to be a "windfall" relative to each claimant's supposed actual injury of up to $1.45. ER97; ER68. Before then, Plaintiffs had considered any disbursement whatsoever to be "economically infeasible." Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Dkt. 181 at 23. Thus it would have been surprising for the settling parties to *ex nihilo* request an increase in cash disbursement to class members, after having already declined to recommend this possibility when

moving for preliminary approval of the revised settlement and having deemed any disbursement to be "infeasible" before then. Indeed, nothing stopped the parties from initially offering to distribute $15 (or more!) a class member, and then reducing that amount *pro rata* if the number of claims was too high. The fact that they waited until *after* the objection to do so suggested that they feared the merits of Kazman's objection. The fact is that class counsel had no intent of fulfilling its fiduciary duty to put the class's interests first, originally planned a $0 settlement, and had to be dragged kicking and screaming to provide any money to the class instead of its preferred *cy pres* charities.

Third, the revised agreement exhibits other structural biases favoring *cy* pres recipients: if so many class members made claims upon the remainder settlement fund that a per capita distribution decreased to $5 or less, the settlement drafted by the parties vested the court with discretion to abolish cash payments to class members altogether, distributing the entirety of the remainder settlement fund to *cy pres* recipients. Revised Settlement §2.3(a)(ii) (ER108-09). Even if the court declined to exercise such discretion, the fund was designed to abolish cash disbursements to the class—disbursing that money to *cy pres* recipients, instead—if so many claims were submitted as to make per capita disbursement "not economically feasible." Revised Settlement §2.3(a)(iii) (ER109). Would the parties have disbursed compensation to class members equal to their actual damages of up to $1.45 per person if the prorated distribution had approached that number? The record suggests not: "our conclusion was at about five bucks per capita, it starts to be kind of, you know, why are we trying

to get one or two dollars, three dollars to an individual class member?" Statement of Michael Rhodes, Dkt. 296 at 15 (ER103). These *cy pres* triggers within the amended settlement are an unsurprising vestige, given that the original settlement agreement provided no cash distribution to class members and $10 million to *cy pres* recipients exclusively. Original Settlement §2.2 (ER113).

The parties could have drafted the revised settlement agreement with discretion vested in the court to increase per capita distribution to class members *but also* with a request that the court exercise such discretion if the opportunity presented itself. The district court asked for such an endorsement: "What I think is the more appropriate approach is for you to make a proposal to me and justify it. Say, 'We think this is fair because…' and then I assess it." Hearing on Motion for Preliminary Approval of Revised Settlement, Dkt. 296 at 7 (ER99). But the settling parties declined to make such a proposal, except insofar as the settlement's default triggers implied their preference for one or another distribution scheme, as described above. Dkt. 296 at 8-10 (ER100-02). Hence Kazman's objection, and his urging that the district court order an increased disbursement to claimants. The parties only adopted Kazman's position after he had presented it via his objection, and expressly acknowledged him when justifying the change. Dkt. 343 at 18 (ER64).

What's more, the record reflects that the court itself was reluctant to increase cash disbursements to the class. The district court said, "I don't think that's discretion that I should have." ER99. Even the district court's order denying Kazman's motion for fees states that "the most salient issue" was whether such increased disbursement

entailed "potential unfairness to those who elected not to submit claims, believing only $10 payments were likely." ER2. At the fairness hearing, the court questioned the settling parties on the propriety of exercising its discretion in this way, Dkt. 424 at 12-14 (ER46-48), Kazman reasserted his point that the court should indeed order such an increase. *Id.* at 74 (ER49). Further, in its order granting final approval, the court acknowledged that it had considered ordering a still further increase of cash disbursements to claimants, as Kazman had advocated and as Kazman's counsel reasserted at the fairness hearing. ER17.

Therefore, the district court court's finding, that "there is nothing from which it can be reasonably be inferred that Katzman's [sic] discussion of the principle that distributions to class members are generally preferable to *cy pres* distributions led to the parties exercising, and this court ordering, that option under the settlement agreement," was clearly erroneous. ER2. In fact there is something—several somethings—from which it should be inferred that Kazman's objection, as acknowledged, led to the parties' request and the court's adoption of Kazman's position with respect to increased cash disbursements to class members. The district court's reluctance to increase the distributions demonstrates that those distributions would not have increased without the threat of an objection scuttling the settlement because of the poor allocation to the class. *E.g., Baby Products*, *supra* (criticizing and reversing approval of settlement with substantial unclaimed settlement funds going to

*cy pres*); *Klier*, *supra* (reversing *cy pres* distribution where feasible to distribute funds to the class).[11]

Just as objectors should not be required to guess whether a judge will *sua sponte* raise objections, objectors should not be required to guess whether parties will unilaterally modify a settlement to correct objectionable problems. *Every* settlement proposal, whether or not it includes an explicit clause to do so, offers the opportunity for a last-minute modification to correct unfairness. *E.g.*, *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-817 (N.D. Ohio 2010) (class attorneys, in response to Center objection of disproportionality, allocate $2 million of their requested clear-sailing fee to the class). That this settlement included an option for the parties to belatedly shuffle the allocation between class distribution and *cy pres* should not mean that class counsel immunized itself against an objector's attorney-fee request. Once again, if class counsels wish to avoid paying fees for successful objections, they should propose settlements that do not need to be modified in response to objections. Any

---

[11] Because there were multiple objectors who had appealed; because plaintiffs threatened extensive collateral litigation over a sizable appeal bond; and because the settlement with modifications and fee reductions was somewhat better than the one he objected to, Kazman decided not to appeal settlement approval; his attorneys were concerned that the non-profit's scarce resources would be better used in cases with fewer appellants, and worried about the logistics of a cacophonous appeal with multiple briefs arguing at cross-purposes. *Cf.* ER93-94. But Kazman agrees with the appellants who argue that *Klier*, governing principles of *cy pres*, and class counsel's fiduciary duty to the putative class, each require reversal of settlement approval in a case where the parties chose to distribute to *cy pres* instead of making a feasible distribution to class members. ER85-89.

other result that refuses to reward substantive objections for post-objection settlement modifications incentivizes class counsel to engage in "heads I win, tails don't count" shenanigans: structure a settlement to favor *cy pres* instead of one's clients, keep it as is if no one complains, and then fix it at the last minute if there is an objection. That is a recipe for more, rather than fewer, unfair settlements.

As *Baby Products* notes, the class is not "indifferent" between whether funds go to class members or to *cy pres*. 708 F.3d at 178. Kazman's objection, and the resulting settlement modification, created real benefit for the class.

### D.   Other public policy reasons militate for broad grants of attorneys' fees to objectors.

As mentioned above, a broad rule ensuring attorneys' fees to successful objectors will incentivize class counsel to avoid creating settlements and making fee requests that draw meritorious objections; the alternative rule gives such class counsel the perverse incentive to propose bad settlements and abusive fee requests, knowing that they are likely to escape scrutiny, but that they can always costlessly modify the settlement or fee request on the occasions objectors catch them red-handed. *Cf. Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). But there are additional reasons that a successful substantive objection should be presumptively awarded attorneys' fees.

*First*, such a rule has the advantage of simplicity. If courts require analysis of speculative "What would have happened if no one objected?" scenarios, it means that

objectors must protect themselves by engaging in expensive collateral discovery to learn the motivations for changes to the settlement or fee award—discovery that is impossible in the case of a district court's subjective motivations for its decision. A strong presumption of entitlement to attorneys' fees avoids these social costs of collateral litigation.

*Second,* so-called "professional objectors" can make substantial sums of money from agreeing to withdraw an appeal of an unsuccessful objection at the expense of the class. ER44; Brunet, *supra,* 2003 U. CHI. LEGAL FORUM 403; Brian Fitzpatrick, *The End of Objector Blackmail?*, 62 VANDERBILT L. REV. 1623 (2009). It creates tremendously perverse incentives and violates norms of distributive justice if attorneys are better compensated for bringing unsuccessful objections than successful objections. The best way to end the ecosystem of both meritless cursory objections that clog the resources of the appellate courts and the problem of self-serving class counsel is to demonstrate that being a watchdog is not a money-losing proposition. While Kazman's non-profit counsel would not be able to fully benefit from such a rule (tax law prohibits public-interest law firms from covering more than half their expenses with attorneys' fees), class members in future cases would benefit both from the presence of for-profit good-faith objections and the deterrent effect on class counsel from the knowledge that shenanigans will result in paying an objector attorneys' fees.

Thus, this Court should adopt a legal rule: when a substantive good-faith objection is subsequently followed by settlement modifications or fee reductions,

objectors are presumptively entitled to attorneys' fees proportional to the resulting class benefit, without regard to self-serving claims that those modifications would have happened anyway. If class counsel wants to avoid the risk that an objector will benefit from an objection they feel "obvious," they should structure their settlements and fee requests to be fair *before* objections are due, rather than afterwards.

## II.    For the same reasons that it was error to deny attorneys' fees, it was error to deny an incentive award to Kazman.

Kazman requests a $500 incentive award. It is appropriate to award objectors incentive awards just as class representatives receive incentive awards. *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 398-400 (D.N.J. 2012); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010); *In re Apple Inc. Sec. Litig.*, No. 5:06-cv-05208-JF, 2011 U.S. Dist. LEXIS 52685 (N.D. Cal. May 17, 2011).

By objecting, Kazman exposed himself to the risk of harassing discovery and private investigation from the plaintiffs' attorneys; other Center clients have faced vitriolic personal attacks and abusive discovery requests when objecting, and many potential Center clients genuinely upset with abusive class-action settlements have declined to object when informed of these risks. ER42-43. Even when *pro bono* counsel is available, class members have little incentive to object and jump through hoops and hurdles erected by the settling parties. Just as class representatives receive incentive payments, so should objectors whose objections meaningfully contribute to class recovery. Because Kazman made a claim, he had standing to request a reduction

in the fee award. As a result of his having come forward, the net settlement fund is millions of dollars larger.

The incentive award Kazman seeks is one third the award given to the class representatives, and a tiny fraction of the incentive award the class representatives sought. For the same reasons the district court erred in denying attorneys' fees to Kazman, it erred in denying an incentive payment to Kazman.

**III.  On remand, Kazman's share of the attorneys' fees award should be disbursed from the 25% of the net settlement fund already found to be a reasonable payment to class counsel so that the class is not double-billed.**

On remand, any attorneys' fees awarded for Kazman's successful objection should be paid from the same quantum that is due to class counsel. To debit the class recovery again—this time for objectors' share of the efforts expended in completing that same transaction—punishes the class for class counsel's failure to put forward a reasonable fee request in the first place. *Cf. In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182 (9th Cir. 2013) ("Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results.").

In the district court, class counsel argued that, under Ninth Circuit law, successful objectors' attorneys' fees should be paid from the common fund. Dkt. 379 at 18. Kazman agrees: whence originated class counsel's award, if not the common fund? To debit the sum awarded class counsel for the amount of attorneys' fees owed to objectors' counsel does not alter the reality that all attorneys' fees charged to the class in this case are being paid from the common fund. Class counsel and Kazman

differ only with respect to class counsel's argument that the net settlement fund should be debited again for Kazman's contribution to the arrival at a satisfactory allocation of the settlement. Kazman disagrees because, as described above, it undermines the district court's factual finding that 25% is a reasonable percentage to be paid here in attorneys' fees.

But Kazman also disagrees on the grounds that the class should not have needed to pay two sets of attorneys for a benefit it deserved *ab initio*. *See In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *20 (W.D. Wash. Jun. 15, 2012) ("[C]lass counsel cannot satisfy its duty to the class by ignoring the weaknesses in the settlements it negotiated."); *id.* at *23 (reducing fee to less than 20% of the common fund to "reflect[] that counsel should not benefit from its efforts to win approval of an inadequate settlement."); *cf also Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (collecting cases from around the country holding that "settlement negotiations may be considered by the district court as a factor in determining a fee award."). Fed. R. Civ. P. 23(h) does not permit class counsel to outsource its work to an outside firm and then bill the class extra.

Awarding attorneys' fees as a percentage of the common fund derives from "common benefit" theory. "[T]he 'common benefit' theory is premised on a court's equity power" *United Steelworkers of Am. v. Sadlowski*, 435 U.S. 977, 979 (1978); *accord Rodriguez II*, 688 F.3d at 653. Where class counsel endorses a "clearly excessive"[12] fee

---

[12] *Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (38.9% would be "clearly excessive" under the Ninth Circuit's benchmark approach).

award that necessitates the participation of objecting class members, the equities are clear. It would be highly inequitable to require the class to foot the bill for **both** class counsel **and** objector's counsel, when class counsel alone created the necessity of objection by tendering an unreasonable request in the first place. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) ("While a court of equity will on swift wings fly to relieve the innocent from wrong and injury, it travels with leaded feet and turns a deaf ear, when called on to furnish a cloak of righteousness to cover sin.") (internal quotation and citation omitted); *Wilson v. Southwest Airlines*, 880 F.2d 807, 816 (5th Cir. 1989) ("class counsel…asked for unreasonably high enhancements and additional fees. Indeed, class counsel produced a figure that would exhaust the entire surplus…. [F]or this reason we hold that, although class counsel's conduct does not destroy its equitable claim, it does diminish it."). Class counsel's first fee request in this case exceeded 50% of the proposed gross settlement fund, and their reconsidered fee request was nearly 40% of the second proposed gross settlement fund.

Yet class counsel wished to shift the cost of their own inefficiency—submitting one unreasonableness fee request after another—to the class. As between the class members and class counsel, "equity requires that the loss, which in consequence thereof must fall on one of the two, shall be borne by him by whose fault it was occasioned." *Neslin v. Wells*, 104 U.S. 428, 437 (1882). The class should not have to pay additional attorneys' fees for the benefit of Kazman's objection when that objection served only to cure inadequacies in the settlement scheme designed by class

counsel. As Supreme Court reporter and jurist Henry Wheaton observed at oral argument in *Hunt v. Rousmanier's Adm'rs*, 21 U.S. (8 Wheat) 174 (1823), "no maxim of equity is better established than this, 'that no man is entitled to the aid of a Court of equity, when the necessity of resorting to that Court is created by his own fault.'" Therefore, Kazman's fees should be paid from the quantum of fees that would otherwise be reaped by class counsel exclusively.

Perhaps this principle is why many district courts from around the country have held that objector fees should be paid out of class counsel's award. *See, e.g., Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 816-17 (N.D. Ohio 2010) (awarding objector's attorneys' fees out of class counsel's fee award); *Parker v. Time Warner Entm't Co., L.P.*, 631 F. Supp. 2d 242, 277 (E.D.N.Y. 2009) (same); *In re Prudential Ins. Co. of Am.*, 273 F. Supp. 2d 563, 573 (D.N.J. 2003), *aff'd* 103 Fed. Appx. 695, 697 (3d Cir. 2004) (same). In circumstances such as these, it is inequitable and bad public policy for the class to pay more than the district court has already deemed fair. Put simply, "counsel should not benefit from its efforts to win approval of an inadequate settlement." *Classmates.com.*, 2012 U.S. Dist. LEXIS 83480, at *23; *see also Commonwealth Electric Co. v. Woods Hole*, 754 F.2d 46, 49 (1st Cir. 1985) ("Outside-chance opportunity for a megabucks prize must cost to play.").

It would be inequitable for the class to pay attorneys' fees in addition to already-determined attorneys' fees award of 25% of the net settlement fund. Therefore, this Court should, upon remand, instruct the district court to award

Kazman's attorneys' fees from the amount already set aside by class counsel's motion for attorneys' fees in this settlement.

## Conclusion

Good-faith substantive objections that are followed by material improvements to the settlement and its allocation should result in attorneys' fees without collateral litigation and discovery over self-serving claims subjectively denying causation. Even if this Court does not adopt this sound rule, the district court committed multiple legal errors in refusing Kazman attorneys' fees.

If this appeal is not mooted by a decision in the related appeals requiring the settlement to be rejected, this Court should vacate the order below denying attorneys' fees, and remand with instructions to calculate an appropriate fee and incentive award, to be deducted from the Rule 23(h) award to class counsel.

Dated: August 6, 2014                   Respectfully submitted,

                                        /s/ Theodore H. Frank
                                        Theodore H. Frank
                                        CENTER FOR CLASS ACTION FAIRNESS
                                        1718 M Street NW, No. 236
                                        Washington, DC 20036
                                        Telephone: (703) 203-3848
                                        Email: tfrank@gmail.com

                                        *Attorney for Objector-Appellant*
                                        *Sam Kazman*

## Statement of Related Cases
## Under Circuit Rule 28-2.6

The cases before this Court consolidated under *Fraley, et. al. v. Facebook, Inc.*, include the following Court of Appeals docket numbers: 13-16819; 13-16918; 13-16919; 13-16929; 13-16936; 13-17028; 13-17097; 13-17214; and 14-15603. All of those cases, like this one, are on appeal from the district court case No. 11-cv-01726. Only this companion case is an appeal from the district court's order denying Kazman's motion for an award of attorneys' fees, and solely therefrom. All other cases are appeals from other orders of the district court.

However, if the appeals from final judgment approving the settlement result in this Court ordering that the settlement should not have been approved and striking the settlement, this appeal would be mooted, as Kazman acknowledges that his entitlement to attorneys' fees and an incentive award depends on the improvements to the settlement his objection engendered being realized. (The appeal would not necessarily be moot if the approval is remanded for further proceedings.)

Executed on August 6, 2014.          */s/ Theodore H. Frank*
                                     Theodore H. Frank
                                     CENTER FOR CLASS ACTION FAIRNESS
                                     1718 M Street NW, No. 236
                                     Washington, DC 20036
                                     Telephone:  (703) 203-3848
                                     Email:  tfrank@gmail.com

                                     *Attorney for Objector-Appellant*
                                     *Sam Kazman*

## Certificate of Compliance
## with Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief contains 11,631 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Garamond font.

Executed on August 6, 2014.

<div style="margin-left: 40%;">

/s/ Theodore H. Frank

Theodore H. Frank
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (703) 203-3848
Email:  tfrank@gmail.com

*Attorney for Objector-Appellant*
*Sam Kazman*

</div>

**Certificate of Service**

I hereby certify that on August 6, 2014, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Ninth Circuit using the CM/ECF system, which will provide notification of such filing to all who are ECF-registered filers.


Executed on August 6, 2014.        */s/ Theodore H. Frank*
                                   Theodore H. Frank
                                   CENTER FOR CLASS ACTION FAIRNESS
                                   1718 M Street NW, No. 236
                                   Washington, DC 20036
                                   Telephone:  (703) 203-3848
                                   Email:  tfrank@gmail.com

                                   *Attorney for Objector-Appellant*
                                   *Sam Kazman*